01

02

03

04

05

06

07

08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09  SADIE YVONNE COLEMAN,  ) CASE NO.   C05-0788-RSL-MAT
                                                       )                    (CR01-309-RSL)
10        Petitioner,                             )
                                                       )
11        v.                                         ) REPORT & RECOMMENDATION
                                                       )
12  UNITED STATES OF AMERICA,   )
                                                       )
13        Respondent.                          )
     _____ )

14

15                                    INTRODUCTION

16        Petitioner Sadie Yvonne Coleman was convicted in 2002 of numerous counts of identity

17  theft and related offenses.  She was sentenced to 120 months in prison.  Petitioner has filed a

18  motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence.  The government has

19  filed an answer and petitioner has filed a response.  Having considered the briefs filed in this matter

20  and the balance of the record, the court recommends that petitioner's § 2255 motion be denied.

21                                    BACKGROUND

22        The Ninth Circuit Court of Appeals summarized the facts underlying petitioner's

23  conviction, in part, as follows:

24              [Petitioner] used a wide variety of false forms, including blank marriage and
             birth certificates, blank W-2 forms, and notary stamps, to create fake identities.  She
25              repeatedly traveled from Washington to Oregon to take advantage of a rule that
             required only a middle initial (rather than a full middle name) to obtain official
26              identification, in order to match fake identities with real victims. She set up a complex

REPORT & RECOMMENDATION
PAGE -1

01
02
03

two-bank scheme that allowed her and her co-conspirators to overdraw accounts by huge amounts by taking advantage of weaknesses in bank security at the chosen institutions.  The district court permissibly concluded that these and [petitioner's] other methods showed a level of sophistication well beyond the usual identity theft.

04 *United States v. Coleman*, Unpublished Disposition, 83 Fed. Appx. 881 (9th Cir. 2003).

05     After a jury trial, petitioner was found guilty and sentenced to 120 months in prison.  (Dkt.

06 #165 in Case No. CR01-309).  She appealed to the Ninth Circuit and that court affirmed her

07 conviction.  Petitioner filed a petition for a writ of  *certiorari*  with the Supreme Court and the

08 Court denied the petition on April 19, 2004.  *See Coleman v. United States*, 541 U.S. 1003

09 (2004).

10     On April 18, 2005, petitioner signed the instant § 2255 motion and delivered it to prison

11 authorities for mailing to the court. (Dkt. #1).  On June 16, 2005, the government filed its answer,

12 (Dkt. #9), along with a motion for leave to file an overlength response. (Dkt. #10).  On July 1,

13 2005, the court granted respondent's motion to file an overlength response.  (Dkt. #13).

14 Petitioner's § 2255 motion was noted for consideration on July 8, 2005.

15     On July 21, 2005, petitioner filed a motion for extension of time to file a response to the

16 government's answer. (Dkt. #14).  On July 25, 2005, the court granted petitioner an extension of

17 time and on August 24, 2005, petitioner filed her response.  (Dkt. #16).  Petitioner's § 2255

18 motion is now ready for review.

19                                <u>GROUNDS FOR RELIEF</u>

20     Petitioner raises the following grounds for relief in her § 2255 motion:

21     1.  Trial Counsel was Ineffective.

22     2.  Sentencing Court Violated Petitioner's Right to Trial by Jury.

23     3.  Trial Court Improperly Denied a Hearing on Petitioner's Motion to Suppress.

24     4.  Trial Court Improperly Instructed Jury on Multiple Conspiracy.

25     5.  Trial Court Improperly Restricted Cross Examination of Tricia Ireland.

26 (Dkt. #1 at 5-8).

REPORT & RECOMMENDATION
PAGE -2

01

<u>DISCUSSION</u>

02

1.  <u>Petitioner's claim that trial counsel was ineffective.</u>

03  Claims of ineffectiveness of counsel are reviewed according to the standard announced in

04  *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).  In order to prevail, petitioner must

05  establish two elements.  First, she must establish that counsel's performance was deficient, *i.e.*,

06  that it fell below an "objective standard of reasonableness" under "prevailing professional norms."

07  *Strickland*, 466 U.S. at 687-88 (1984).  Second, she must establish that she was prejudiced by

08  counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's

09  unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

10  U.S. at 694.

11  Regarding the first prong of the    *Strickland* test, there is a "strong presumption that

12  counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*,

13  466 U.S. at 689.  Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential."

14  *Id.*  The test is not whether another lawyer, with the benefit of hindsight, would have acted

15  differently, but whether "counsel made errors so serious that counsel was not functioning as the

16  'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 689.

17  In addition, the Supreme Court has stated that "a court need not determine whether

18  counsel's performance was deficient before examining the prejudice suffered by the defendant as

19  a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.  "The object of an ineffective

20  assistance claim is not to grade counsel's performance.  If it is easier to dispose of an ineffective

21  assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so,

22  that course should be followed." *Id.*

23  Petitioner contends that her trial counsel, Walter Palmer, was ineffective in a variety of

24  ways.  First, petitioner maintains that her counsel never presented her with the government's offer

25  for a plea bargain.  The government, however, has attached exhibits to its answer that demonstrate

26  that counsel did provide petitioner with information about the offer made by the prosecutor.

REPORT & RECOMMENDATION
PAGE -3

01  These exhibits include a letter to petitioner from her counsel which refers to the plea offer (Dkt.

02  #9, Ex. 6), and a sworn declaration by petitioner's counsel that he discussed the offer with

03  petitioner on several occasions.  (*Id.*, Ex. 7).  In his declaration, counsel states that after hearing

04  the offer, petitioner concluded that it did not "give [her] anything," and she rejected it. (   *Id.*)

05  Further, the government argues that even if she did not receive the information regarding the plea

06  offer, petitioner suffered no prejudice because the sentence which she ultimately received was

07  "lower than she was promised or could expect under the plea offer." (Dkt. #9 at 19).

08          In her response to the government's answer, petitioner reiterates that she did not receive

09  the letter sent to her by counsel and she implies that it might have been misaddressed.  (Dkt. #16

10  at 12).  Petitioner also denies that they ever discussed the offer.  She contends that had she

11  accepted the offer, her sentence would have been shorter than if she proceeded to trial because

12  under the plea agreement, the court would have found that petitioner had caused less of a financial

13  loss to the institutions she defrauded.  (Dkt. #16 at 13-14).

14          The court first notes that there is no evidence that the letter sent by counsel to petitioner

15  was misaddressed or was returned as undeliverable.  The court also notes that the trial judge in

16  this matter, the Honorable Barbara Jacobs Rothstein, commented favorably on counsel's

17  reputation when Judge Rothstein denied a motion by petitioner to substitute counsel, which

18  petitioner had based upon an alleged breakdown in communication.  In denying the motion, Judge

19  Rothstein stated: "[Counsel] has appeared before this court on many occasions, and the court is

20  familiar with and respects his judgment regarding matters of trial strategy. . . . [Petitioner] has

21  failed to give the court any reason to call this respect into question." (Case No. CR01-309L, Dkt.

22  #94 at 3, n.2).

23          However, the court need not resolve whether petitioner actually received information

24  regarding the plea offer because petitioner's claim of prejudice is speculative.  She claims that her

25  sentence would have been shorter because the amount of loss caused by her actions would have

26  been less under the plea agreement than was eventually determined, after a jury trial, by the

REPORT & RECOMMENDATION
PAGE -4

01  sentencing court.   But the only evidence of the plea agreement's contents – a letter dated

02  December 19, 2001 from the prosecutor to petitioner's counsel – does not mention the amount

03  of financial loss caused by petitioner.  (Dkt. #9, Ex. 5).  Petitioner's claim is thus based on

04  petitioner's *prediction* of how the sentencing court would have viewed the conduct underlying her

05  offenses, and is not supported by anything concrete in the record.  Accordingly, because petitioner

06  has not shown prejudice, she has not met her burden under *Strickland* and the first part of her

07  ineffective assistance of counsel claim should be denied.  *Strickland*, 466 U.S. at 697.

08  Second, petitioner contends that counsel was ineffective because he failed to move to

09  suppress evidence of her criminal record at trial and that, by failing to do so, he effectively

10  precluded her from testifying.  Petitioner maintains that she refrained from testifying for fear that

11  her prior convictions would be used to impeach her.  Thus, petitioner's claim is premised on her

12  theory that counsel could have succeeded in barring the use of petitioner's prior convictions to

13  impeach her.

14  Respondent argues that this claim is frivolous because under the Federal Rules of

15  Evidence, after a witness has testified, the witness may be impeached with evidence that she "has

16  been convicted of a crime. . . if it involved dishonesty or false statement."  Fed. R. Evid.

17  609(a)(2).[1]  Here, petitioner had two convictions which appear to have involved "dishonesty or

18  false statement":  unlawful issuance of a bank check and  theft in the second degree.  (Dkt. #9 at

19  19-20, *citing* Presentence Report).  These convictions thus would have been admissible under the

20  Federal Rules of Evidence.  Accordingly, moving to suppress the convictions would likely have

21  been futile, and petitioner's counsel cannot be deemed to be ineffective for failing to file a futile

22  motion.

23  Petitioner next claims that her counsel was ineffective because counsel allegedly "never

24  

25  
        [1] In addition, "evidence that an accused has been convicted of [a felony] shall be admitted
26  if the court determines that the probative value of admitting this evidence outweighs its prejudicial
    effect . . . ."  Fed. R. Evid. 609(a)(1).  If the conviction is more than ten years old, the court must
    conduct a balancing test to determine whether it is admissible. Fed. R. Evid. 609(b).

REPORT & RECOMMENDATION
PAGE -5

01 interviewed a single prosecution witness or defense witness . . . [and] failed to investigate what

02 other defenses were available." (Dkt. #1 at 4-5). While this accusation sounds grave, petitioner

03 does not support the claim with any detail.[2] She does not, for example, identify the witnesses that

04 counsel should have interviewed, nor does she describe what such an interview would have yielded

05 in the way of exculpatory evidence. Similarly, petitioner does not specify the defenses that counsel

06 allegedly failed to investigate. Thus, she does not show any prejudice resulting from counsel's

07 alleged inaction. The claim therefore must be denied.

08        Petitioner's final claim of ineffectiveness is a cryptic one. She contends that counsel was

09 ineffective for failing to "request video evidence from the government," but she does not further

10 describe this video evidence. (Dkt. #1 at 4). The government responds that the only video

11 evidence of which it is aware is a videotape showing a co-conspirator buying merchandise with

12 a fraudulent check, while petitioner is nearby. (Dkt. #9 at 21). This tape does not seem

13 exculpatory to the court. Petitioner thus does not provide sufficient details to substantiate this

14 claim. Accordingly, petitioner's last claim of ineffective assistance of counsel should be denied.

15        2. Petitioner's claim that sentencing court violated petitioner's right to jury trial.

16        Petitioner next claims that her right to trial by jury was violated when the sentencing court

17 enhanced her sentence after making certain findings pursuant to the federal sentencing guidelines,

18 *e.g.*, the amount of financial loss caused by petitioner's criminal conduct. Petitioner's claim

19 appears to be based upon the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738

20 (2005). However, the Ninth Circuit recently joined all the other circuit courts that have

21 considered the question and held that "the rule announced by     *Booker* does not . . . operate

22 retroactively," to cases, such as the instant one, that were final before     *Booker* was decided.

23 *United States v. Cruz*, __F.3d__, Case No. 03-35873 (9th Cir. September 16, 2005). Therefore,

24 _____

25        [2] The court notes that petitioner raised this issue in her motion but does not address it in
   her response to the government's answer. In fact, her response addresses only the first part of her

26 claim of ineffective assistance of counsel and her second claim that the sentencing court violated
   her right to trial by jury. (Dkt. #16).

01   petitioner may not challenge her sentence based on *Booker*, and this claim should be denied.[3]

02        3.  Petitioner's claim that the trial court improperly denied her motion to suppress.

03        4.  Petitioner's claim that the trial court improperly instructed the jury.

04        5.  Petitioner's claim that the trial court improperly restricted cross examination.

05        Petitioner's last three claims were also raised in her direct appeal.  Claims will ordinarily

06   not be entertained under § 2255 that have already been rejected on direct review.  *See Reed v.*

07   *Farley* 512 U.S. 339, 358 (1994).  The Ninth Circuit has held that in such circumstances, the

08   scope of proceedings on § 2255 motions is limited to determining whether a petitioner can show

09   either manifest injustice or a change in the law.  *Polizzi v. United States,* 550 F.2d 1133, 1135 (9th

10   Cir. 1976), *citing Kaufman v. United States,* 394 U.S. 217, 226-27 & n.8 (1969).

11        This rule is the opposite of the rule governing habeas petitions brought by state prisoners

12   under 28 U.S.C. § 2254.  Under § 2254, state prisoners are *required* to first bring their claims in

13   state court before federal review may proceed.  The reason for this difference between federal and

14   state habeas petitions has been articulated as follows:  "In the federal prisoner context, upon full

15   and fair appellate consideration of a constitutional claim, the federal prisoner receives *before*

16   reaching the postconviction stage what the state prisoner does not receive until *after* exhausting

17   that stage – plenary consideration of her federal legal claims by independent federal judges."

18   James Liebman and Randy Hertz, *Federal Habeas Corpus Practice and Procedure*, § 41.7e, 1762

19   (4th ed. 2001).

20        Petitioner has not shown either manifest injustice nor a change in the law that would enable

21   her to present claims in the instant § 2255 motion which were previously raised in her direct

22   ────────────────

23        [3] Petitioner attempts to argue that her *Booker* claim is actually based upon *Apprendi v.*
     *New Jersey*, 530 U.S. 466 (2000), which was decided *before* petitioner's conviction became final,
24   thus obviating the need for the court to apply *Booker* retroactively.  (Dkt. #19, Attachment
     entitled "*Apprendi* Argument [sic]").  However, *Apprendi* dealt with a New Jersey statute and not
25   the Federal Sentencing Guidelines under which petitioner was sentenced.  In addition, the Ninth
     Circuit in *Cruz* also held that the rule in *Booker* was a "new rule," and not simply the application
26   of prior rulings such as *Apprendi* to new facts.  *Cruz* at 13356-57.  Therefore, petitioner's
     argument that *Apprendi* applies to her case and invalidates her sentence should be rejected.

REPORT & RECOMMENDATION
PAGE -7

01  appeal.  Accordingly, petitioner's last three claims should be denied.

02  CONCLUSION

03          For the foregoing reasons, petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside,

04  or correct her sentence, lacks merit and should be denied.  A proposed Order is attached.

05          DATED this  19th  day of  September , 2005.

06

07                                          Mary Alice Theiler
                                            United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT & RECOMMENDATION
PAGE -8